IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

STEVEN R. HINKLE,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. CV 09-5105 NJV

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S REPLY AS MOOT**

## I. BACKGROUND

On October 27, 2009, Plaintiff Steven R. Hinkle filed a complaint seeking judicial review of a denial of Social Security benefits by Defendant Michael J. Astrue ("Commissioner" or "Defendant"). (Doc. No. 1). On February 22, 2010, Defendant filed his answer and manually filed the administrative record pursuant to this Court's procedural order. (Doc. Nos. 13 & 14). On March 23, 2010, Plaintiff filed a motion for summary judgment. (Doc. No. 17). On April 26, 2010, Defendant filed a cross-motion for summary judgment and an opposition to Plaintiff's motion for summary judgment. (Doc. No. 23). On May 8, 2010, Plaintiff filed an opposition to Defendant's cross-motion for summary judgment and additional support for Plaintiff's motion for summary judgment. (Doc. No. 24). On May 10, 2010, Defendant filed a motion to strike Plaintiff's reply, stating that Plaintiff's opposition is actually considered his reply, pursuant to this Court's procedural order. (Doc. No. 25). For the purposes of this order, Plaintiff's opposition to Defendant's cross-motion for summary judgment will be referred to as Plaintiff's reply.

Before the Court are Plaintiff's motion for summary judgment, Defendant's cross-motion for summary judgment, and Defendant's motion to strike Plaintiff's reply. (Doc. Nos. 17, 23, & 25).

For the reasons stated herein, the Court **DENIES** Plaintiff's motion for summary judgment, **GRANTS** Defendant's cross-motion for summary judgment, and **DENIES** Defendant's motion to strike Plaintiff's reply as **MOOT**.

## II. DISCUSSION

Plaintiff seeks judicial review of a February 25, 2008 decision by an administrative law judge ("ALJ") denying his application for Social Security disability benefits. Plaintiff's application was denied (1) initially, (2) on reconsideration, and (3) after a hearing. Subsequently, Plaintiff filed a request for review of the ALJ decision, which was denied by the Appeals Council on August 28, 2009. At that time, the ALJ decision became the final decision of the Commissioner. (AR 4).

Plaintiff contends that (1) the Commissioner's actions, findings and conclusions were not supported by substantial evidence, and (2) incorrect legal standards were applied in the determination of the ultimate issues. Specifically, Plaintiff claims that the ALJ's findings did not have substantial support, and/or that the ALJ made legal errors, with regard to:

(1)  Evaluating Plaintiff's mental impairments under 20 C.F.R § 404.1520a;

(2)  Incorporating mental limitations in the residual functional capacity and in hypothetical questions posed by the vocational expert;

(3)  Considering Plaintiff's obesity; and

(4)  Finding that Plaintiff could stand and/or walk for 6 hours in an 8-hour work day.

For the reasons detailed herein, the Court finds that Plaintiff's contentions are without merit; the final decision of the Commissioner was based upon substantial evidence and free from legal error.

### A.   Legal Standard

Pursuant to 42 U.S.C. § 405(g), the Commissioner is required make a "final decision" on a claim before a district court is able to review it. *See Bass v. Social Security Admin.,* 872 F.2d 832, 833 (9th Cir. 1989); *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975). The ALJ's decision became the Commissioner's final decision after the Appeals Council denied Plaintiff's request for review. Therefore, review of the Commissioner's decision by this Court is appropriate.

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of HHS*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). The Commissioner's conclusion is upheld even where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Also, the ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

**B.    Analysis**

The ALJ evaluated Plaintiff's application for benefits using a five-step sequential process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2009). In the first four steps, the burden of proof rests upon the claimant to establish entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). At fifth and final step, the burden shifts to the ALJ to show that (1) the claimant can perform substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" that claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

At the first step, the ALJ considers the claimant's work activity, if any. 20 C.F.R § 404.1520(a)(4)(i). If the claimant is doing "substantial gainful activity," he is not disabled. 20 C.F.R §§ 404.1520(a)(4)(i), 404.1520(b). The claimant bears the burden of showing that he was not engaged in a "substantial gainful activity" since the date he allegedly became disabled. *Rhinehart*, 438 F.2d at 921. In this case, Plaintiff claimed that he became disabled on July 5, 2005. (AR 14). The ALJ noted that Plaintiff provided inconsistent evidence regarding his employment after July 5, 2005, but the ALJ ultimately gave Plaintiff "the benefit of the doubt" in determining that he had not engaged in substantial gainful activity since July 5, 2005. (AR 16-17). The ALJ explicitly noted that Plaintiff was not a reliable witness. (AR 17, 21).

At the second step, the ALJ considers the medical severity of the claimant's impairment(s).

3

20 C.F.R § 404.1520(a)(4)(ii). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, he is not disabled. 20 C.F.R §§ 404.1520(a)(4)(ii), 404.1520(c). At step two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. *Rhinehart*, 438 F.2d at 921. "Severe" is defined as significantly limiting physical or mental ability to do basic work activity. 20 C.F.R. § 404.1520(c). Plaintiff was found to have the following severe impairments: degenerative disc disease; recurrent inguinal hernia; bilateral carpal tunnel syndrome; hypertension; affective disorders; obesity; and left shoulder pain. (AR 17).

At the third step, the ALJ assesses the medical severity of the claimant's impairments by comparing them to a list of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R § 404.1520(d). The claimant bears the burden of showing that his impairments qualify as a listed impairment. *Rhinehart*, 438 F.2d at 921. If the claimant is successful, a disability is presumed and benefits are awarded. 20 C.F.R §§ 404.1520(a)(4)(ii), 404.1520(d). If the claimant is unsuccessful at step three, the ALJ proceeds to step four.[1] 20 C.F.R § 404.1520(e). The ALJ found that Plaintiff's impairments do not qualify as one of the listed impairments. (AR 20).

At the fourth step, the ALJ considers the claimant's residual functional capacity ("RFC") and his past relevant work. 20 C.F.R § 404.1520(a)(4)(iv). If the claimant has sufficient RFC to perform his past relevant work, he is not disabled. 20 C.F.R §§ 404.1520(f), 404.1560(b). The claimant bears the burden of showing that he does not have sufficient RFC to perform past relevant work. *Rhinehart*, 438 F.2d at 921; 20 C.F.R § 404.1520(e). The ALJ found that Plaintiff has the RFC to perform light unskilled work. (AR 21). Specifically, the ALJ found, *inter alia,* that Plaintiff is able to (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk six hours in an eight-hour workday; (3) sit six hours in an eight-hour workday; (4) occasionally climb, balance, stoop, kneel, crouch or crawl; (5) perform "occasional fingering" with the non-dominant left upper extremity; (6) perform simple, repetitive tasks; and (7) engage in

---

[1] Before proceeding from step three to step four, the ALJ assesses the claimant's residual functional capacity. 20 C.F.R § 404.1520(e). The residual functional capacity assessment is used at both step four and step five.

4

occasional interaction with coworkers, supervisors, and the public. *Id.* Because Plaintiff's past relevant work is classified as medium semiskilled work, rather than light unskilled work, the ALJ found Plaintiff was unable to perform any past relevant work. (AR 22). When assessing Plaintiff's RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but did not find his statements regarding intensity, persistence, and limiting effects of these symptoms to be entirely credible. (AR 21). This credibility finding is based on Plaintiff's inconsistent testimony regarding his work history and his methamphetamine use. (AR 22).

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if he can make an adjustment to other work. 20 C.F.R § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work, he is not disabled. *Id.*; 20 C.F.R § 404.1520(g). If the claimant cannot make an adjustment to other work, he is disabled. 20 C.F.R §§ 404.1520(a)(4)(v); 404.1520(f); 404.1560(c)). The burden is upon the ALJ to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. *Rhinehart*, 438 F.2d at 921; 20 C.F.R § 404.1520(f). The ALJ credited the testimony of a vocational expert who testified that Plaintiff was able to work as a laminator, table worker, coater, key cutter, and surveillance system monitor, and that such work is sufficiently available both in California and throughout the United States. (AR 23). Therefore, the ALJ found Plaintiff was not disabled. (AR 23-24).

1. <u>ALJ Properly Evaluated Plaintiff's Mental Impairments Pursuant to 20 C.F.R. § 404.1520a</u>:

20 C.F.R § 404.1520a provides a framework for the ALJ to evaluate mental impairments. The ALJ must first evaluate pertinent symptoms, signs, and laboratory findings to determine if there is a medically determinable mental impairment. 20 C.F.R § 404.1520a(b). Then, the ALJ rates the degree of the claimant's functional limits in four broad areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R § 404.1520a(c)(3). Finally, the ALJ determines whether the impairment is severe and, if so, whether it qualifies as a listed mental disorder. 20 C.F.R § 404.1520a(d)(2).

In order to comply with 20 C.F.R § 404.1520a, the ALJ's written decision must: (1) incorporate the pertinent findings, significant history (including examination and laboratory findings), and conclusions; and (2) include a specific finding as to the degree of limitation in each of the four broad areas previously mentioned. 20 C.F.R § 404.1520a(e)(2). Plaintiff concedes that the ALJ incorporated pertinent and specific findings related to the four broad areas enumerated in the regulations. However, Plaintiff claims that the ALJ ignored an opinion by psychiatrist Dr. Regan, and therefore did not consider all relevant significant history and functional limitations in the record.

The Court finds this claim baseless, as the ALJ cites to Dr. Regan's report as the basis for his conclusion that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the [listed impairments]." (AR 20). Further, the ALJ's rating of Plaintiff's mental functional limits is consistent with Dr. Regan's opinion/report. Dr. Regan wrote that Plaintiff can do "simple [and] complex work[,]" but his persistence and pace were "moderately limited by depression, anxiety & pain." (AR 248). Dr. Regan also stated that Plaintiff has "moderate limits with [concentration, persistence, and pace]" and needs "moderate limits with [the] public." *Id.* The ALJ described Plaintiff's mental functional limits as follows: (1) mild restriction on activities of daily living; (2) moderate difficulty with social functioning; (3) moderate difficulties with regard to concentration, persistence, and pace; and (4) no episodes of decompensation. (AR 20). This is consistent with Dr. Regan's analysis and identical to Dr. Regan's mental residual functional capacity assessment (AR 246-247) and rating of Plaintiff's functional limitations (AR 253). The Court finds that the ALJ's decision was consistent with Dr. Regan's opinion and did appropriately incorporate the significant history and functional limitations reflected in the record.

When a mental impairment has been found to be severe, as the ALJ found in Plaintiff's case, the next step in the evaluation process is to determine if the impairment qualifies as, or is equivalent in severity to, a listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). Plaintiff challenges the ALJ's finding that Plaintiff's impairment did not meet the criteria for an affective disorder and/or an anxiety related disorder. In order for Plaintiff's impairment to qualify as an affective disorder, Plaintiff must demonstrate that his impairment satisfies either (1) both the paragraph A and

6

paragraph B requirements, or (2) the paragraph C requirements detailed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.04. In order for Plaintiff's impairment to qualify as an anxiety related disorder, Plaintiff must demonstrate that his impairment satisfies either (1) both the paragraph A and paragraph B requirements, or (2) both the paragraph A and paragraph C requirements detailed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.06. Analysis of the paragraph A requirements is not necessary for either disorder, as the ALJ found that Plaintiff failed to meet the paragraph B and paragraph C requirements for both disorders, and those findings are supported by substantial evidence.

   To meet the paragraph B requirements, Plaintiff must have a "marked" restriction in two of three listed areas, or a "marked" restriction in one area coupled with repeated episodes of decompensation of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04 and 12.06. A "marked" rating indicates a higher degree of limitation than a "mild" or "moderate" rating. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C). Again, it is Plaintiff's burden to establish that he meets these requirements. There is no dispute that the ALJ found Plaintiff's restrictions were all mild to moderate, and that Plaintiff also had no history of decompensation. (AR 20). The ALJ's findings as to these issues find sufficient support in the report of Dr. Regan, which expressly addressed the paragraph B requirements and found that Plaintiff did not satisfy those requirements for either affective disorders or anxiety related disorders. (AR 249-255).

   To meet the paragraph C requirement for affective disorders, Plaintiff must have "[1] repeated episodes of decompensation, each of extended duration; or [2] a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or [3] current history inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.04. To meet the paragraph C requirement for anxiety related disorders, Plaintiff must have a "complete inability to function independently outside the area of [his] home." 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.06. Plaintiff has the burden of showing that his mental impairment meets the paragraph C requirements for these disorders.

7

Dr. Regan's assessment of Plaintiff indicates there is no evidence that Plaintiff suffers from any of the paragraph C requirements for either affective disorders or anxiety related disorders. (AR 254). More specifically, that assessment indicates that Plaintiff has not suffered any episodes of decompensation of extended duration, nor is he significantly limited in his ability to adapt to unfamiliar or changing circumstances. (AR 253, 247). Further, Plaintiff did not offer any evidence that he is unable to function outside a highly supportive living arrangement or unable to function independently outside the area of his home. Indeed, the record contains medical opinion to support the opposite conclusion. On two separate occasions, Dr. Jones (Plaintiff's psychiatrist) explicitly planned for Plaintiff to leave his household if his relationship with his family or brother became negative or hostile. (AR 225, 231). Also, a medical opinion by Dr. Joyce, who performed a psychiatric disability examination on Plaintiff on April 25, 2006, stated that Plaintiff had lived alone in a one-bedroom travel trailer for a year and was independent in "ADLs" (activities of daily life). (AR 240). Dr. Regan found Plaintiff had only a "mild" limitation on his activities of daily life. (AR 253). The Court finds that the reports of Dr. Jones, Dr. Joyce, and Dr. Regan are sufficient to support Defendant's finding that Plaintiff did not meet the paragraph C requirements of for affective or anxiety related disorders.

Additionally, Plaintiff claims the ALJ failed to consider all impairments or combination of impairments when he found that Plaintiff's condition did not qualify as an affective disorder or an anxiety related disorder. If an impairment or a combination of impairments does not specifically meet one of the listed impairments, a determination of the medical equivalence is based on a comparison of the ALJ's findings with those closely analogous listed impairments. 20 C.F.R. §§ 404.1526(b), 416.926(b). The resulting decision is based on all evidence on record about the impairments, their relevant effect(s) on the plaintiff, and opinions of designated medical or psychological consultants. *Id*. at §§ 404.1526(c), 416.926(c).

The ALJ found that Plaintiff's "mental impairments, considered singly or in combination, do not...equal the criteria [for affective or anxiety related disorders]." (AR 20). That finding was based upon the opinions of Dr. Joyce and Dr. Regan. (AR 240 & 254). Both medical opinions addressed the combination of mental impairments from which Plaintiff suffers and neither opinion supports the

8

1 conclusion that Plaintiff's impairments qualify as an affective disorder or an anxiety related disorder.
2 Further, at this stage in the disability analysis, Plaintiff bears the burden of showing that the
3 combination of his impairments is the equivalent of one or more listed disorder(s). 20 C.F.R §
4 404.1520(d). Plaintiff has provided no evidence or argument as to how his impairments constitute
5 the equivalent of one or more of the listed disorders. The ALJ is not required to seek out additional
6 evidence regarding a listed disorder absent an indication that the record is insufficient to evaluate the
7 evidence. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

8   For the foregoing reasons, this Court finds that the ALJ acted properly in evaluating
9 Plaintiff's mental impairments and that there is substantial evidence in the record to support the
10 ALJ's findings and conclusions.

11       2.   <u>The ALJ Properly Incorporated Mental Limitations in the his Analysis of Plaintiff's Residual Function Capacity and in the Hypothetical Questions Posed to the</u>
12            <u>Vocational Expert</u>

13   When an ALJ poses a hypothetical question to a vocational expert, the question must
14 include all limitations supported by medical evidence in the record. *See Bayliss v. Barnhart*, 427
15 F.3d 1211, 1217-18 (9th Cir. 2005). Plaintiff claims that the ALJ's hypothetical regarding Plaintiff's
16 ability to perform "simple, repetitive tasks" does not account for Plaintiff's difficulty with memory,
17 concentration, agoraphobia, or mood swings. More specifically, Plaintiff argues that the ALJ's
18 hypothetical did not account for documented limitations of concentration, persistence, or pace in the
19 medical record.

20    In response, Defendant cites *Stubbs-Danielson v. Astrue*, which found that a restriction to
21 "simple tasks" properly accounted for "mild" and "moderate" mental limitations, like those at issue
22 in this case. *Stubbs-Danielson v. Astrue*, 359 3d 1169, 1174 (9th Cir. 2008). Plaintiff claims that
23 *Stubbs-Danielson* is distinguishable from this case based on Dr. Regan's opinion that Plaintiff has a
24 severe anxiety-related pace deficiency. However, Plaintiff misstates Dr. Regan's opinion, which
25 reads "persistence [and] pace moderately limited by...anxiety." (AR 252). Dr. Regan never
26 mentions a *severe* anxiety-related pace deficiency and repeats the finding of a *moderate* pace
27 deficiency at page 253 of the Administrative Record. Additionally, in the analysis that Plaintiff
28

9

relies on, Dr. Regan directly contradicts Plaintiff's contention by explicitly stating Plaintiff "can do simple [and] complex work." (AR 248).

Plaintiff also claims that he has a severely limited occupational base for unskilled work, citing *Social Security Ruling 85-15*; Program Operations Manual System (POMS) DI 25020.010. SSR 85-15 states that the basic mental demands of competitive, remunerative, unskilled work include the ability to:

>  (1)  understand, carry out, and remember simple instructions;
>
>  (2) respond appropriately to supervision, coworkers, and usual work situations; and
>
>  (3) deal with changes in routine work setting.

A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. *SSR 85-15* at *4. Plaintiff equates the ALJ's finding that Plaintiff can engage in "occasional interaction with coworkers, supervisors and the public" (AR 21) to a substantial loss of ability to perform these basic work-related activities. Plaintiff makes this contention without citing any legal authority or providing any additional support from the record.

Plaintiff's contention is directly contradicted by the medical opinions of Dr. Regan and Dr. Joyce. In Dr. Regan's mental RFC assessment, she found Plaintiff could "do simple and complex work...[,]" and was "not significantly limited" in his ability to understand, carry out, and remember very short, simple, instructions.[2] (AR 248, 246). Dr. Regan also found that Plaintiff was "not significantly limited" in his ability to accept instruction and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. (AR 247).

Plaintiff was examined by Dr. Joyce with the chief complaint of "not being able to work." (AR 239). Dr. Joyce's findings were consistent with Dr. Regan's, finding that Plaintiff "can follow simple & complex instructions" and "does appear capable of responding appropriately to

---

[2] Dr. Regan also found that Plaintiff was "not significantly limited" in his ability to understand, carry out, and remember detailed instructions. (AR 246). This indicates Plaintiff has a higher level of functioning than the basic requirement of SSR 85-15. SSR 85-15 requires the ability to understand, carry out, and remember simple, rather than detailed, instructions.

10

1  supervision, co-workers, or the usual work situation, including changes in routine setting." (AR
2  240). Based on the medical opinions of Dr. Regan and Dr. Joyce, the Court finds Plaintiff does not
3  have a severely limited occupational base for unskilled work.

4  Therefore, the Court finds that the ALJ's hypothetical was proper, that Defendant did abide
5  by SSR 85-15, and that Plaintiff's mental limitations into the were properly incorporated into the
6  ALJ's RFC analysis.

### 3. ALJ Properly Considered the Effects of Obesity

Obesity, alone, is not considered disabling. *See SSR 02-1p*. When evaluating the impact of a claimant's diagnosed obesity, the Commissioner will not make assumptions about the severity or functional effects of obesity combined with other impairments. *See id.* "Obesity may enter the multiple impairment analysis, but only by a dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system." *Celaya v. Halter*, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003). Without evidence of functional impairments resulting from obesity, the ALJ is prohibited from making the assumption that obesity itself is somehow disabling. *See id.* The mere existence of an impairment, such as obesity, is insufficient proof of a disability. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).

Plaintiff claims that the ALJ did not sufficiently evaluate Plaintiff's obesity and failed to consider that it exacerbated Plaintiff's pain. Specifically, Plaintiff points to the ALJ's failure to accept or discuss Dr. Ware's recommendation that Plaintiff should avoid bending, stooping, and crouching. Dr. Ware is a neurologist who conducted a comprehensive orthopedic evaluation on Plaintiff on May 13, 2006. (AR 241). The Court finds Plaintiff is incorrect in two respects. First, the ALJ did properly evaluate Plaintiff's obesity by finding it was a severe impairment. (AR 17). Second, the ALJ's finding was consistent with Dr. Ware's recommendations in limiting Plaintiff to only occasional stooping, crouching, and kneeling. (AR 21).

Further, it is important to note that Dr. Ware's limitation was based solely upon the idea that bending, stooping, and crouching exacerbated Plaintiff's back pain. (AR 244). Because pain is subjective, difficult to reliably measure, and largely determined by self-reported symptoms, the severity of that pain becomes an issue of Plaintiff's credibility. *See SSR 88-13*. In deciding whether

11

to admit a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis. *Batson v. Commissioner of Social Security Administration,* 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of an underlying impairment or combination of impairments that could reasonably be expected to produce pain. *Id*. Then, the ALJ must engage in a credibility analysis and make a finding about the intensity, persistence, and limiting effects of the claimant's symptoms. *Id*.

If there is no affirmative evidence of exaggeration or malingering, then the ALJ may reject the claimant's testimony regarding the severity of symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion. *Id*. "The ALJ may consider at least the following factors when weighing the claimant's credibility: [claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his] testimony and [his] conduct, [claimaint's] daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (internal quotation marks and citations omitted). Further, lack of candor about drug use may be used to discredit a claimant's description of pain, where a claimant "had not been a reliable historian presenting conflicting information about...drug...usage." *Id.* at 959.

In the first step of this analysis, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged pain. (AR 21). In the next step, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his pain were not entirely credible. (AR 21). The ALJ specifically found Plaintiff lacked credibility when considering Plaintiff's inconsistent testimony regarding his methamphetamine use and employment history. (AR 22). Plaintiff told Dr. Joyce that he had used methamphetamine about 20 to 25 times from approximately 1997 to 2003, and that he had been arrested for methamphetamine possession in 1997. (AR 239). Then, in his July 18, 2007 testimony before the ALJ, he stated the last time he possessed methamphetamine was approximately 1995. When pressed about his statement to Dr. Joyce about methamphetamine use from 1997 to 2003, Plaintiff stated it was "not

12

true." (AR 239). Plaintiff also provided contradictory testimony regarding his employment history. On February 19, 2007, Plaintiff stated he worked at a mortuary for a period of three months, from July 1, 2006 to October 9, 2006. (AR 125). On July 18, 2007, Plaintiff first estimated he had worked at the mortuary for approximately one year, and then approximately nine months. He then stated he could not remember his length of employment, despite his previous assertion he had stopped working at the mortuary only nine months earlier. (AR 310). On February 14, 2006, Plaintiff listed all the jobs he had held in the 15 years before he became unable to work. He listed six different job titles from the period of August 1990 to October 2004. (AR 105). On April 12, 2007, when listing all the jobs he had in the 15 years before he became unable to work, Plaintiff listed only two job titles from the period of 1996 to 2004. (AR 132).

Like the ALJ in *Thomas,* the ALJ here inferred that Plaintiff's lack of candor regarding his employment history and drug use carried over to his description of physical pain. Also like *Thomas*, there is substantial evidence in the record to support the ALJ's negative conclusions about Plaintiff's veracity. Because reported symptoms of pain are connected to Plaintiff's credibility, the ALJ appropriately made an adverse finding regarding Plaintiff's obesity-related pain. Despite finding Plaintiff not entirely credible, the ALJ still gave some credence to Plaintiff's testimony by limiting Plaintiff to only *occasional* stooping, kneeling, and crouching in his RFC analysis.

### 4. ALJ Properly Found Plaintiff Could Stand and/or Walk Six Hours in an Eight Hour Workday.

The ALJ found Plaintiff had the residual functional capacity to do light work, which includes the ability to stand and/or walk six hours in an eight-hour workday. (AR 21). Plaintiff argues that this finding lacks support by substantial evidence, citing an opinion by Dr. Ware stating "the number of hours that this claimant could be expected to stand and walk in an eight-hour workday would be approximately four hours, limited by pain." (AR 244). However, Defendant cites the opinion of Dr. Thornburg, who reviewed and approved Plaintiff's November 1, 2005 RFC assessment, found that Plaintiff was capable of standing and/or walking, with normal breaks, for a total of about six hours in an eight-hour workday. (AR 185).

The Ninth Circuit has consistently held that questions of credibility and resolution of conflicts in testimony are functions solely of the ALJ. *Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996). More specifically, "the ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Id.*

Here, the conflict in medical testimony centers around Plaintiff's functional capacity to stand and/or walk, which was explicitly based on Plaintiff's subjective statements of pain. (AR 244). As stated earlier, the degree to which a claimant's pain symptoms are limiting is a credibility issue. The ALJ found Plaintiff was not credible regarding his symptoms of pain, specifically citing his inconsistent testimony regarding his work history and drug use. (AR 21). Because the ALJ found that Plaintiff's statements of pain were not entirely credible, it was reasonable to discount Dr. Ware's opinion, which was based on those less than credible statements. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

The ALJ properly found that Plaintiff was able to stand and/or walk six hours in an eight-hour workday. Based on the ALJ's credibility determination, it was appropriate to discount the opinion of Dr. Ware and rely on the recommendations of Dr. Thornburg.

### III. CONCLUSION

The Court finds there is substantial evidence to support the findings of the Defendant in denying Plaintiff's application for Social Security disability benefits, and that in doing so the ALJ did not misapply the law. Therefore, the Court **DENIES** Plaintiff's motion for summary judgment, **GRANTS** Defendant's cross-motion for summary judgment, and denies Defendant's motion to strike Plaintiff's reply as **MOOT**.

**IT IS SO ORDERED.**

Dated: August 13, 2010

NANDOR J. VADAS
United States Magistrate Judge

14